1

2

3

4

5

6

# UNITED STATES DISTRICT COURT

7

EASTERN DISTRICT OF CALIFORNIA

8

9

10

11

12

13

| JAMES E. BRYANT, | CASE NO. 1:09-cv-01285-GBC PC |
|---|---|
| Plaintiff, | ORDER DISMISSING COMPLAINT, WITH LEAVE TO AMEND, FOR FAILURE TO STATE A CLAIM |
| v. | |
| KEN CLARK, et al., | (Doc. 1) |
| Defendants. | THIRTY-DAY DEADLINE |
| _____ / | |

14

15

## I.      Screening Requirement

16

Plaintiff James E. Bryant ("Plaintiff") is a state prisoner proceeding pro se and in forma

17

pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Currently pending before the Court

18

is the complaint, filed July 23, 2009.  (Doc. 1.)

19

The Court is required to screen complaints brought by prisoners seeking relief against a

20

governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

21

Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

22

"frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks

23

monetary relief against a defendant who is immune from such relief."  28 U.S.C § 1915(e)(2)(B).

24

In determining whether a complaint states a claim, the Court looks to the pleading standard

25

under Federal Rule of Civil Procedure 8(a).  Under Rule 8(a), a complaint must contain "a short and

26

plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

27

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it

28

demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v.

1

1    Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555

2    (2007)).

3            Under section 1983, Plaintiff must demonstrate that each defendant personally participated

4    in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires

5    the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 129 S. Ct.

6    at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). "[A] complaint [that]

7    pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line

8    between possibility and plausibility of entitlement to relief.'" Iqbal, 129 S. Ct. at 1949 (quoting

9    Twombly, 550 U.S. at 557). Further, although a court must accept as true all factual allegations

10   contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Iqbal, 129

11   S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere

12   conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

13   **II.     Complaint Allegations**

14           Plaintiff is in the custody of the California Department of Corrections and Rehabilitation and

15   is housed at California Substance Abuse Treatment Facility in Corcoran. On August 2, 2006, inmate

16   Jackson was assigned be Plaintiff's cellmate. (Doc. 1, ¶ 10.) Inmate Jackson asked Plaintiff for help

17   with his appeal and Plaintiff responded that he wouldn't help Jackson across the street, the State

18   should have killed him instead of sentencing him to twenty five to life. Plaintiff then told inmate

19   Jackson, "I guess you'll try and kill me since the staff around here tell everyone I'm gay." (Id., ¶ 11.)

20   Inmate Jackson began to jump on his bed until he was removed from the cell by Defendant Nesmith.

21   (Id.)

22           On August 6, 2006, Defendant Nesmith wrote a confidential chrono stating that Plaintiff had

23   attempted to engage in sex games with his cellmate, inmate Jackson, and that Plaintiff had stated he

24   was going to beat up and rape his cellmate. (Id., p. 30.) The chrono was placed in Plaintiff's central

25   file and inmate Jackson was listed as an enemy of Plaintiff. (Id., ¶ 13.) Plaintiff was placed in

26   administrative segregation ("ad seg") based upon his being perceived as a threat to the safety and

27   security of the institution. (Id., ¶ 14, p. 31.) On August 7, 2006, Defendant Smart came to ad seg

28   for a review and ordered Plaintiff to remain in ad seg and to be housed and exercised alone pending

1  the ICC review.  (Id., ¶ 16.)

2  On August 9, 2006, Defendant Smart appeared at the ICC review.  (Id., ¶ 17.)  On August

3  18, 2006, a rule violation report was issued charging Plaintiff with threatening an inmate.  (Id., ¶ 18.)

4  On September 15, 2006, Defendant Baires conducted a disciplinary hearing on the rule violation and

5  Plaintiff was found not guilty due to lack of corroborating evidence.  (Id., ¶ 19.)  Plaintiff continued

6  to be housed in ad seg due to enemy concerns.  (Id., p. 52.)

7  On October 19, 2006, Plaintiff appeared before the ICC.  (Id., ¶ 22.)  On January 18, 2007,

8  Plaintiff requested documents be removed from his central file.  Defendant Baires told Plaintiff that

9  only the documents ordered to be removed by Defendant Smart would be removed from the file.

10  (Id., ¶ 25.)  On November 6, 2006,  Plaintiff wrote to Defendant Clark expressing his concern of

11  being housed alone due to his asthma and heart condition.  (Id., ¶ 26.)  On January 25, 2007, Plaintiff

12  appeared before another ICC committee.  Although Plaintiff requested that he be transferred to

13  another prison, he was released from ad seg into D facility and was ordered to be housed alone

14  because he was determined to be a predator of his cellmates.  (Id.)

15  On February 9, 2007, Plaintiff was told he was to be moved to the yard.  A short time later

16  Plaintiff was told by Sgt. Munoz that Defendant Lias had said he was to be single celled and Plaintiff

17  was ordered to remain in ad seg.  (Id., ¶ 28.)  On February 13, 2007, the lock up order was rescinded

18  and Plaintiff was moved to D facility on February 15, 2007.  (Id., ¶ 29.)  On February 23, 2007,

19  Plaintiff appeared before the UCC committee, chaired by Defendant Smart, and was designated to

20  have an "R" (sex) and "S" (single cell) suffix on his file and no gate passes for work or placement

21  in building one because Plaintiff could be a predator on inmates housed there.[1]  (Id., ¶ 30.)  Plaintiff

22  alleges that he suffered a heart attack which required open heart surgery from the "undue stressful

23  situations, assaults by staff and inmates orchestrated by staff" and mental and emotional stress.  (Id.,

24  ¶ 31.)  The remaining fourteen pages of the complaint consist mainly of legal argument and case

25  citations.

26  ///

27

28

_____

[1] Plaintiff refers to Exhibit L.  However there is no Exhibit L filed with the complaint.

1

**First Cause of Action**

2     Plaintiff alleges that he was placed in restrictive custody for 194 days without procedural

3 safeguards required by Wright v. Enomoto, 462 F.Supp. 397 (N.D. Cal. 1976) in violation of due

4 process and Title 15 of the California Code of Regulations.   Defendants engaged in retaliatory

5 conduct because he has been active in pursuing the rights of other prisoners which has made him

6 unpopular with prison staff and "a bunch of [like minded] inmates." (Id., p. 17.)  Plaintiff contends

7 that if the report is to be believed he was placed in ad seg for protected conduct, talking about sex,

8 which was retaliatory conduct.  (Id., p. 19.)

9     **Second Cause of Action**

10     Plaintiff contends that his rights under the First, Fifth, and Fourteenth Amendments were

11 violated by leaving documents in his central file.  Defendant Nesmith never observed any conduct

12 and knew the information was unreliable.  Defendant Nesmith never complied with Plaintiff's

13 repeated demands that a sex kit be required, and if Defendants thought such conduct had occurred

14 criminal charges would have been pursued.  (Id., pp. 23, 24.)

15     Plaintiff brings suit against Defendants Ken Clark, J. Lias, L. Smart, M. Baires, and J.

16 Nesmith.  He is seeking declaratory and injunctive relief requiring the documents regarding this

17 incident and the "R" and "S" suffixes be removed from his central file and that he be allowed to

18 double cell with the inmate of his choice, and monetary damages.

19 **III.    Discussion**

20     **A.    Due Process**

21     The Due Process Clause protects against the deprivation of liberty without due process of

22 law. Wilkinson v. Austin, 545 U.S. 209 (2005). In order to state a cause of action for a deprivation

23 of due process, a plaintiff must first identify a liberty interest for which the protection is sought. The

24 Due Process Clause does not confer a liberty interest in freedom from state action taken within a

25 prisoner's imposed sentence.  Sandin v. Conner, 515 U.S. 472, 480 (1995).  However, a state may

26 "create liberty interests which are protected by the Due Process Clause." Sandin, 515 U.S. at 483-84.

27 A prisoner has a liberty interest protected by the Due Process Clause only where the restraint

28 "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of

1  prison life." Keenan v. Hall, 83 F.3d 1083, 1088 (9th Cir. 1996) (quoting Sandin, 515 U.S. at 484).

2  Plaintiff has failed to state a cognizable claim as his complaint does not allege an interest protected

3  by the Due Process Clause.

### 1.      Administrative Segregation

5      The Due Process Clause does not "create a liberty interest in freedom from administrative

6  segregation." Toussaint v. McCarthy, 801 F.2d 1080, 1091 (9th Cir. 1985), abrogated in part on

7  other grounds by Sandin, 515 U.S. 472.  Administrative segregation is the type of confinement that

8  should be reasonably anticipated by inmates at some point in their incarceration. Id. (quoting Hewitt

9  v. Helms, 459 U.S. 460, 468 (1983)).  The Ninth Circuit has concluded that prisoners have no liberty

10  interest in remaining free from administrative segregation or solitary confinement. See May v.

11  Baldwin, 109 F.3d 557, 565 (9th Cir.1997).

12      Plaintiff's reliance on Wright v. Enomoto, is misplaced.  The finding of a liberty interest in

13  Wright was based upon the conditions that were presented to that court and did not establish a liberty

14  interest for all confinement in administrative segregation.  See Toussaint, 801 F.2d at 1091-92.

### 2.      Reclassification

16      A prisoner does not have a constitutional right to a particular classification while

17  incarcerated.  Hernandez v. Johnson, 833 F.2d 1316, 1318 (9th Cir. 1987).  Since there is no

18  constitutional right to a particular classification while incarcerated, no liberty interests exists in

19  Plaintiff's being assigned the "R" and "S" suffix.

### 3.      False Reports

21      To the extent that Plaintiff attempts to allege a liberty  interest regarding the submission of

22  false reports against him, he fails to state a cognizable claim for relief.  The Due Process Clause itself

23  does not contain any language that grants a broad right to be free from false accusations, but

24  guarantees certain procedural protections to defend against false accusations. Freeman v. Rideout,

25  808 F.2d 949, 951 (2nd Cir. 1986).  However, "prison disciplinary proceedings are not part of a

26  criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not

27  apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974).

28  ///

1            **4.**        **Expungement of Records from Plaintiff's Central File**

2            The Ninth Circuit has not found that prisoners have an independent right, grounded in the

3 Due Process Clause, to an accurate prison record. Hernandez v. Johnston, 833 F.2d 1316, 1318-19

4 (9th Cir. 1987); see Velasquez v. Woods 329 F.3d 420, 421-22  (5th Cir. 2003).  As previously

5 stated, liberty interests created by prison regulations are limited to freedom from restraint which

6 "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of

7 prison life." Sandin, 515 U.S. at 484.  Plaintiff has alleged no facts with regard to the information

8 that Plaintiff seeks to have expunged or corrected in his central file that establish the existence of

9 a liberty interest entitling Plaintiff to due process.

10            **B.**        **Retaliation**

11            A viable claim of retaliation in violation of the First Amendment consists of five elements:

12 "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that

13 prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First

14 Amendment rights, and (5) the action did not reasonable advance a legitimate correctional goal."

15 Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005).

16            The Court rejects Plaintiff's contention that he was charged in a rule violation for protected

17 conduct.  The allegation was that Plaintiff threatened to beat up and rape his cellmate.  Directly

18 threatening harm is not activity protected under the First Amendment. Fogel v. Collins, 531 F.3d

19 824, 830 (9th Cir. 2008).  Nor does Plaintiff link any Defendant to knowledge of any protected

20 conduct that would be sufficient to state a cognizable claim for a violation of the First Amendment.

21 Iqbal, 129 S. Ct. at 1948.

22            **C.**        **California Code of Regulations, Title 15**

23            Section 1983 provides a cause of action where a state actor's "conduct deprived the claimant

24 of some right, privilege, or immunity protected by the Constitution or laws of the United States."

25 Leer v. Murphy, 844 F.2d 628, 632 (9th Cir. 1987) (quoting Parratt v. Taylor, 451 U.S. 527, 535

26 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327, 328 (1986)).  There is no

27 independent cause of action for a violation of Title 15 regulations. See Davis v. Kissinger, No. CIV

28 S-04-0878 GEB DAD P, 2009 WL 256574, *12 n.4 (E.D.Cal. Feb. 3, 2009).  "To the extent that

1   the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond

2   that guaranteed by the federal Constitution, [s]ection 1983 offers no redress." Sweaney v. Ada

3   County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997), quoting Lovell v. Poway Unified Sch. Dist., 90

4   F.3d 367, 370 (9th Cir. 1996).

5           **D.**      **Fifth Amendment**

6           The Due Process Clause of the Fifth Amendment provides that no one shall "be deprived of

7   life, liberty, or property without due process of law." "[T]he Fifth Amendment's due process clause

8   applies only to the federal government." Bingue v. Prunchak, 512 F.3d 1169, 1174 (9th Cir. 2008).

9   Since all Defendant's in this action are state employees the Fifth Amendment Due Process Clause

10  does not apply.

11          **E.**      **Rule 18**

12          Plaintiff may not pursue multiple, unrelated claims in this action.  Pursuant to the Federal

13  Rules of Civil Procedure, [a] party asserting a claim, counterclaim, crossclaim, or third-party claim

14  may join, as independent or alternate claims, as many claims as it has against an opposing party."

15  Fed. R. Civ. P. 18(a).  "Thus multiple claims against a single party are fine, but Claim A against

16  Defendant 1 should not be joined with unrelated Claim B against Defendant 2.  Unrelated claims

17  against different defendants belong in different suits, not only to prevent the sort of morass [a

18  multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required

19  filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals

20  that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." George

21  v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).  Plaintiff will not be permitted to proceed with a

22  "mishmash of a complaint," id., and is cautioned that if his amended complaint fails to comply with

23  Rule 18(a), the Court will choose which claims will proceed and will dismiss out all unrelated

24  claims.

25          Plaintiff will be granted leave to file an amended complaint to cure the deficiencies described

26  in this order.  Plaintiff is advised that the failure to comply with the Local Rules, the Federal Rules

27  of Civil Procedure, and the Court's orders will result in Plaintiff's amended complaint being stricken

28  from the record.  Plaintiff is further warned that failure to take meaningful steps to obey the Court's

1  orders may result in this action being dismissed for failure to obey a court order.  See Local Rule

2  110.

3      In his amended complaint, Plaintiff shall state as briefly as possible the facts of his case,

4  describing how each defendant is involved, and Plaintiff shall not give any legal arguments or cite

5  to any cases or statutes.  See Form Complaint, § IV, enclosed with this order.  Finally, if Plaintiff

6  chooses to amend the complaint, the amended complaint may not exceed twenty pages in length, and

7  it will be stricken from the record if it violates this page limitation.

8  **V.      Conclusion and Order**

9      For the reasons stated, Plaintiff's complaint does not state a cognizable claim for relief for

10  a violation of his constitutional rights.  Plaintiff is granted leave to file an amended complaint within

11  thirty days.  Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff may not change the

12  nature of this suit by adding new, unrelated claims in his amended complaint.  George, 507 F.3d at

13  607 (no "buckshot" complaints).

14      Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each

15  named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights,

16  Iqbal, 129 S. Ct. at 1948-49.  "The inquiry into causation must be individualized and focus on the

17  duties and responsibilities of each individual defendant whose acts or omissions are alleged to have

18  caused a constitutional deprivation."  Leer, 844 F.2d at 633.  Although accepted as true, the

19  "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ."

20  Twombly, 550 U.S. at 555 (citations omitted).

21      Finally, an amended complaint supercedes the original complaint, Forsyth v. Humana, Inc.,

22  114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must

23  be "complete in itself without reference to the prior or superceded pleading," Local Rule 220.  "All

24  causes of action alleged in an original complaint which are not alleged in an amended complaint are

25  waived."  King, 814 F.2d at 567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th

26  Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

27      Based on the foregoing, it is HEREBY ORDERED that:

28      1.      The Clerk's Office shall send Plaintiff a civil rights complaint form;

8

2.   Plaintiff's complaint, filed July 23, 2009, is dismissed for failure to state a claim upon which relief may be granted under section 1983;

3.   Within **thirty (30) days** from the date of service of this order,

    a.   Plaintiff shall file an amended complaint;

    b.   The amended complaint shall not exceed twenty pages in length; and

4.   If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

Dated:   January 5, 2011

UNITED STATES MAGISTRATE JUDGE